DECLARATION

I, Thomas D. Irvin, being duly sworn, depose and state as follows:

1. I have been a U.S. Postal Inspector with the United States Postal Inspection Service ("USPIS") since July 2005, and I am currently assigned to a multi-purpose assignment, located at the Fargo, ND office of the Denver Division. As part of my duties as a U.S. Postal Inspector, I investigate the use of the U.S. Mails to illegally send and receive controlled substances and drug trafficking instrumentalities. As part of this assignment, I received formal training from the USPIS and training through contact with experts from various law enforcement agencies. I have received training in the enforcement of laws, and identification of packages with characteristics indicative of criminal activity. I have conducted and participated in criminal investigations utilizing the normal methods of investigation.

2. This affidavit is being submitted for the purpose of supporting a civil forfeiture complaint under 18 U.S.C. § 981(a)(1)(C) and a restraining order under 18 U.S.C. § 983(j)(1)(A), against certain assets that represent proceeds and from violations of 21 U.S.C. §§ 841(a)(1), 843(b), 846, and 18 U.S.C. § 1956(h). Moreover, this affidavit is being submitted to obtain a restraining order to preserve forfeitable assets, the forfeitability of which will be established below. I submit that failure to obtain the restraining order, may result in the destruction of the forfeitable assets, and/or removal of the forfeitable assets from the jurisdiction of this court. Because this affidavit is being submitted for these limited purposes, I have not included each and every fact known concerning this investigation. I have set forth only the facts to provide a factual basis for preserving and forfeiture of assets. Where statements of others are set forth in this affidavit, they are set forth in substance and not verbatim. The information contained in this affidavit is based on my own personal knowledge and information gained through training and experience, in addition to information obtained by other law enforcement agents, witnesses and documents.

3. As set forth elsewhere in this affidavit, the property and funds to be restrained and which are subject to forfeiture include:

- **1. All funds in accounts at US Bank** under the name of or under the signatory control of Daniel D. Torres and/or, Prophecy Industry Corporation, this includes but is not limited to account numbers X-1415;

- **2. All funds in accounts at Wells Fargo Bank** (more info) under the name of or under the signatory control of Daniel D. Torres and/or, Prophecy Industry Corporation, this includes but is not limited to account numbers x-0915;

- **3. All funds in accounts at JP Morgan Chase Bank** under the name of or under the signatory control of Daniel D. Torres and/or, Prophecy Industry Corporation, this includes but is not limited to account numbers x1986-;

- **4. All funds in accounts at Robinhood Financial LLC, Robinhood Financial, Robinhood Markets Inc., and/or Robinhood Markets** under the name of or under the signatory control of Daniel D. Torres and/or, Prophecy Industry Corporation;

- **5. All funds in accounts at Coinbase Inc. and/or Coinbase,** under the name of or under the signatory control of Daniel D. Torres and/or, Prophecy Industry Corporation;

4. At the time this affidavit was prepared, I have reviewed JP Morgan Chase financial records in the name of Daniel Torres, showing money transfers to Robinhood Financial, Coinbase Inc., and Bank of America accounts in the name of Daniel Torres. The reviewed records consist of JP Morgan Chase records and do not clearly identify the specific account numbers for accounts at Bank of America, Robinhood Financial, and Coinbase Inc., in the name of Daniel Torres.

5. Based upon my training, experience, and participation in other financial investigations involving large amounts of marijuana, methamphetamine, heroin, and/or other controlled Substances, I know the following:

I. That large-scale narcotics traffickers often purchase and/or title their assets in fictitious names, aliases, or the names of relatives, associates or business entities to avoid detection of these assets by government agencies. That even though these assets are in the names other than the narcotics trafficker, the narcotics traffickers actually own and continue to use these assets, and exercise dominion and control over them.

II. That large scale narcotics traffickers must maintain, on hand, large amounts of U.S. currency in order to maintain and finance their on-going narcotics business.

III. That when drug traffickers amass large proceeds from the sale of drugs that the drug traffickers attempt to legitimize these profits through money laundering activities. To accomplish these goals, drug traffickers utilize, including but not limited to, domestic and international banks and their attendant services, securities brokers, professionals such as attorneys and accountants, casinos, real estate, shell corporations, and the purchase of large items such as vehicles, motor-homes, watercrafts, and tools, as a way to conceal the detection of a large scale drug trafficker.

IV. That the sale of Controlled Substances generates large quantities of U.S. Currency in small denominations. (referred to as "street money").

V. That the Currency Transaction Report (CTR) (IRS Form 4789), which is required to be completed and files with IRS by all financial institutions on every currency transaction which exceeds $10,000.00, hinders narcotics traffickers when they attempt to negotiate their illegal profits at a financial institution.

VI. That in order to evade filing of a CTR, narcotics traffickers often "structure" their currency transactions so that no one transaction

        exceeds $10,000.00 or they provide false or misleading information in an attempt to legitimize or conceal the source and/or ownership of the currency.

VII.    That narcotics traffickers at times become concerned the Internal Revenue Service or other federal, state, or local agencies will scrutinize their financial transactions. In order to legitimize their spending, these traffickers file tax returns reporting income commensurate with the amount of money they have spent during the year, which they feel can be traced and documented by the government. The "source" of their income reported on these returns is usually falsely stated, misleading, or generic in terms. Retained copies of these returns are commonly kept by the traffickers in their residences.

VIII.    That the courts have recognized that unexplained wealth is probative evidence of crimes motivated by greed, in particular, trafficking of controlled substances.

IX.    Based on my training and experience, and upon my review of records from JP Morgan Chase and Wells Fargo, statements obtained from witnesses detailed in this affidavit, and review of cell phone records, I believe that funds contained within the specific accounts detailed above, represent proceeds and facilitating property of the previously detailed criminal violations. In reviewing the financial transactions, I believe that funds deposited into the JP Morgan Chase and Wells Fargo accounts represent drug trafficking proceeds and that funds from these deposits were then transferred to other accounts controlled by Daniel Torres including Bank of America, Coinbase, US Bank, and Robinhood.

UNLAWFUL DRUG TRAFFICKING

6. Since approximately March of 2021, the DEA Fargo North Dakota Resident Office (RO) and U.S. Postal Inspection Service (USPIS) Fargo, ND Domicile, has been investigating the Drug Trafficking Organization (DTO) of Colton Schock for distributing cocaine and other controlled substances in Fargo, North Dakota and elsewhere. During the course of this investigation, law enforcement officers have learned that Daniel Torres aka "D.Rose" aka "Dangelo" has been supplying Colton Schock with cocaine and various other controlled substances. Daniel Torres has also shipped parcels, through the mail, that have contained significant quantities of controlled substances. Controlled substances proceeds have also been shipped back to Daniel Torres. The investigation has revealed that Torres and his registered business, Prophecy Industry Corporation, have received controlled substance proceed payments through various methods to include mailed currency, Peer to Peer money transfers to include Venmo, Cash App, Zelle, and physically delivered US Currency.

7. On February 27, 2021, one kilogram of cocaine was seized from a Cooperating Defendant (CD) which was intended for Colton Shock in Fargo, ND. The CD was stopped in Wyoming while transporting cocaine on behalf of Colton Shock, which was sourced from Daniel Torres. Wyoming State Investigators conducted a subsequent interview with CD. During the interview, the CD informed investigators that she/he was moving large amounts to cocaine to Fargo, ND. The CD stated that she/he recently was intending to move a load of cocaine from California to Fargo, ND on behalf of an individual named Colton Schock. Colton Schock currently resides in the area of Fargo, North Dakota. The CD stated that she/he has made numerous trips to California over the past eleven months to pick up cocaine, on behalf of Schock, and bring the cocaine back to North Dakota. The CD informed investigators that when she/he travels to California, she/he brings large sums of cash, provided by Schock, to pick up cocaine. The CD informed investigators that she/he has picked up approximately 13 kilos of cocaine, conservatively, since May 2020, and transported back many large cash loads:

approximately $250k, $170k, and $160K. The CD informed agents that Schock utilizes "Snap Chat" to communicate drug activity.

8. On May 13, 2021, a follow up proffer interview of the above-mentioned CD was conducted. CD stated that she/he often met Colton Schock in Horace, North Dakota to pick up money before travelling to California to obtain kilograms of cocaine from Deangelo Daniel Torres aka "D. Rose." The CD stated that she/he usually met Schock at the "Big Erv's" restaurant parking lot. The CD informed agents of the operation, in which she/he went to California, at the direction of Schock to pick up large amounts of cocaine to bring back to North Dakota. The CD stated that this operation has been going on for approximately a year. The CD stated that "D. Rose" resided at 12303 Sunglow Court, Victorville, CA. The CD also informed agents that when she/he would buy products from "D. Rose", that "D. Rose" would instruct the CD to send money to that above-mentioned address at Sunglow Court, in Victorville CA. The CD also stated that most of the packages she/he received from "D. Rose" had a return address of 12303 Sunglow Court, Victorville, CA. The CD also stated that when she/he sent money, she/he always listed Daniel Torres as the recipient. The CD informed Agents that "D. Rose" sends packages containing various narcotics including edibles, cocaine, mushrooms, ecstasy and molly to different addresses in North Dakota.

9. The CD stated that in approximately August 2020 she/he transported a 'vacuum sealed bag' of money to California. The CD stated that she/he would send money/cash to "D. Rose's" home address. The CD stated that she/he believed "D. Rose's" name was either Louis Torres or Daniel Torres. The CD stated that while she/he was in California, she/he drove by the address that she/he always sent money too, which was Daniel Torres: 12303 Sunglow Court, Victorville, CA. The CD stated that all the money was sent via "cash" to that above-mentioned address. The CD stated that she/he also sent money to a second address as directed by "D. Rose". The CD also stated that "D. Rose" informed her/him to send money to Louis Torres at address: 14427 Delicious Street, Adelanto CA 92301. The CD also stated that

Torres labeled all his controlled substances/products as "original prophecy." The CD also stated that she/he sent money to Torres via the "Cash App," to Torres user name "$ Prophecy Gang."

10. The CD stated that on her/his first trip to Victorville, California to pick up cocaine on behalf of Schock, she/he met Daniel Torres in a hotel parking lot. The CD stated that Torres pulled up next to her/him in a white Porsche and put a "safe" in her/his car. The CD stated that the "safe" contained 2 kilograms of cocaine. May 18, 2021, DEA Riverside conducted surveillance at Daniel Torres' residence located at 12303 Sunglow Court, Victorville, CA and observed a white Subaru vehicle in the driveway. The CD observed a photograph (shown to him by agents) of the vehicle in the driveway of 1203 Sunglow Court, Victorville, CA. The CD stated that she/he recognized the vehicle as Daniel Torres' vehicle. During the surveillance, agents observed Daniel Torres exit from 1203 Sunglow Court, Victorville, CA and enter the driver seat of the white Subaru, and drive to 15055 Bear Valley Rd. Unit G, Hesperia, CA 92345 *(As detailed later in the affidavit, this is the known address for Torre's business Prophecy Industry Corporation).* Agent's observed Torres exit Unit G and proceed to a Walmart located in Victorville, CA. Agents observed Torres enter the Walmart, and later exit pushing a shopping cart to the white Subaru. Agents observed Torres place a roll of bubble wrap packaging material, brown envelopes and packing tape into the white Subaru. Agents observed Torres pull into the parking lot of 15055 Bear Valley Rd and enter Unit G with the packing supplies. Agents observed multiple unidentified Hispanic males enter Unit G. Agents observed one of the unidentified males exit from Unit G with a shoe box which the unidentified male attempted to conceal under his T-shirt. Agents observed the unidentified male hand the shoe box off to another unidentified male driving a white Malibu. Agents observed the white Malibu exit the parking lot of 15055 Bear Valley Rd. Unit G, Hesperia, CA 92345, and the unidentified male (who handed off the shoe box) go back into Unit G.

11. I have analyzed voluminous records to identify packages and addresses being used to facilitate the distribution of controlled substances and related proceeds associated with this investigation. As indicated above, the investigation revealed that the US Mail was being used to ship controlled substances and related proceeds between California and North Dakota. I have reviewed USPS records and databases resulting in the following information. USPS records show a pattern of shipping activity which is consistent with the information provided by the CD. Specifically, packages are typically shipped from the Victorville, CA, Adelanto, CA or nearby areas, to locations in North Dakota, including addresses of Colton Schock. Packages containing controlled substance related proceeds or suspected controlled substance proceeds, are then sent to locations used by and/or associated with Daniel Torres.

12. I reviewed USPIS records and databases and learned that "Daniel Torres, 14427 Delicious St., Adelanto, CA" was the subject of a USPIS 2019 marijuana distribution investigation in Missouri. A review of the investigative materials shows that USPIS seized two packages containing marijuana, having a listed return address of 14779 Seneca Road, Victorville, CA. As detailed later in this affidavit, this is the same return address used on at least one package sent to North Dakota and determined to contain controlled substances. USPS records as part of the Missouri case show at least two USPS Express Mail packages sent from Missouri to 14427 Delicious St., Adelanto, CA (Subject Premise "1") were identified as money being sent to the source in California.

13. I reviewed USPS records and databases and learned that 12303 Sunglow Ct., Victorville, CA was receiving frequent packages from different geographic locations in North Dakota and Minnesota, including from Horace, ND and Grafton, ND, which contained characteristics of packages containing controlled substance related proceeds. I further reviewed USPS records and databases and learned that an address in Grafton, ND appeared to be associated to the packages being shipped to Victorville, CA, and was also receiving frequent packages from Victorville, CA. USPS records show that between February 20, 2021 and May 18, 2021,

approximately twenty three (23) Priority and Express Mail packages were mailed to the Victorville, CA address, which all originated in areas of North Dakota, particularly Fargo, ND; Grand Forks, ND; Grafton, ND; Horace, ND; Wahpeton, ND; Park River, ND; Bismarck, ND; Hazen, ND; Beulah, ND; and Devils Lake, ND. I reviewed the available and retained package label information which shows that five (5) most recent packages delivered to the Victorville, CA address, were all addressed to the name "Deangelo" or "Dangelo." USPS records show that on May 13, 2021, a USPS Express Mail package with tracking number ending in 9789US was mailed from Horace, ND to the Victorville, CA address. The package weighed 2 pounds and 12 ounces, and contained $55.20 in postage. The package was not delivered to "D. Torres" until May 18, 2021 which generated two USPS customer inquiries. One of the inquiries was by phone number 562-305-2747. I reviewed subscriber records which show this number is registered to Daniel Torres.

14. I reviewed California Secretary of State (SOS) records for Prophecy Industry Corporation. As indicated previously, Prophecy Industry Corporation is a known business owned and/or associated to Daniel Torres. SOS records show two filings for the years of 2020 and 2021. SOS records for 2020 show the mailing address for Prophecy Industry Corporation as 14427 Delicious Street, Adelanto, CA, and the Chief Executive Officer as Daniel D. Torres, with a listed address of 14427 Delicious Street, Adelanto, CA (Subject Premise "1"). A review of the 2021 Statement of Information filing shows the mailing address still as 14427 Delicious Street, Adelanto, CA, as well as a Principal Business Address of 15055 Bear Valley Rd. Unit G., Hesperia, CA.

15. The CD stated that she/he went to Torres' shop (presumed to be 15055 Bear Valley Rd. Unit G., Hesperia, CA). The CD stated that while in the shop, she/he observed many boxes. The CD stated that this was during a trip in January 2021, where she/he brought back approximately a "brick" or two of cocaine.

16. I reviewed USPS customer account records and identified an electronic registration account in the name of Daniel Torres using address 1203 Sunglow Ct., Victorville,

9

CA, and his known phone number 562-305-2747. The account is registered as a business account with a listed user name of prophecy321, and email address of prophecyind@icloud.com. USPS records show the account in the name of Torres was accessed on July 8, 2021 using an IP address of 47.137.64.237.

17. On June 15, 2021, I obtained a Federal search warrant issued in the District of North Dakota, to search a Priority Mail which had originated from Victorville, CA and was destined to an address in Grafton, ND. The package was addressed to Shelly Johnson, 113 Nash Drive, Grafton, ND and had a listed return address of 14779 Seneca Rd., Victorville, CA. As previously detailed, this is the same return address utilized in the Missouri packages found to contain controlled substances, and in which Daniel Torres was identified as receiving shipments of proceeds. The Grafton package was found to contain approximately two vacuum sealed bags of suspected marijuana having a gross weight of 1,152 grams. The marijuana was seized by USPIS.

18. On June 28, 2021, following a positive K-9 alert, I obtained a Federal search warrant to search a USPS Express Mail package which originated in Horace, ND, and was addressed to "Dangelo" 12303 Sunglow Court, Victorville, CA. The package was found to contain two large vacuum sealed bags which contained approximately $62,740.00 in US Currency. The vacuum sealed bags containing smaller bundles of currency which were rubber banded together. I reviewed USPS records and databases for the Express Mail package destined to the Victorville, CA address. USPS records show that multiple customer Internet Protocol (IP) addresses and phone numbers had been captured when the Horace Express Mail package had been tracked or inquired upon. USPS records show that the same California based IP (47.137.64.237) as detailed above, and associated to Daniel Torres, also tracked the Express Mail package found to contain $62,740.00 in US Currency. On July 19, 2021, DEA SA Coleman received the results of an administrative subpoena sent to Frontier Communications for the IP information associated with the package containing $62,740.00 of US Currency. The subscriber information returns to an individual other than Daniel Torres.

19. On June 28, 2021, I was contacted by a Horace, ND USPS employee about the Express Mail package from Horace, ND to Victorville, CA. The employee advised that a younger male went to the Horace, ND Post Office and inquired as to the delivery status of the Express Mail package destined to Victorville, CA, and found to contain US Currency. The employee stated sometime between 9:30 AM and 10:30 AM, an unknown male arrived and inquired about the delivery status of the Express Mail package. The male was in possession of the USPS retail receipt from when the package had been originally mailed. The employee said the male asked where the package was. The employee said the male identified himself as David Erikson. The employee said that she/he would attempt to determine the package whereabouts and contact him with any updates. The male replied that he did not know his phone number. The employee said the male then looked at his phone and said "I will just give you this number." The male provided phone number 701-680-2247. This is a known phone number used by Colton Schock. The employee described the white male as skinny, with reddish hair, wearing glasses and a blue face mask. The employee did not recognize the person as someone she knew. The employee said she/he felt confident she/he could identify the male if she/he saw him again due to the close interaction she/he had with him. Postal Inspector Henney was provided with a prepared six-pack photo lineup, with one of the pictures depicting Colton Schock. Inspector Henney was not familiar with Colton Schock and did not know which picture in the lineup was that of Schock. The following information was relayed to me by Inspector Henney. Inspector Henney read the Inspection Service photo lineup notice to the USPS employee. The USPS employee was then provided with the photo lineup. The USPS employee selected number 6, which depicted Colton Schock. The USPS employee stated she/he was 90% sure this was the individual she interacted with. The USPS employee circled, initialed, and dated the lineup.

20. On August 2, 2021, DEA, USPIS, HSI, and Fargo PD, served a federal search warrant at two addresses associated with Colton Schock, specifically 408

Southwood Drive, Horace ND and 4869 50th Avenue South, Fargo, ND. During the search warrant in Horace, ND, law enforcement encountered Colton Schock in the basement flushing suspected cocaine down the toilet. Also observed in the bathroom were multiple baking sheets, with wax paper and a white powdery substance on the floor and toilet seat, suspected to be cocaine. During the search of the residence, law enforcement observed, what appeared to me a manufacturing lab in the basement bedroom where Colton Schock was staying. In the master bedroom, in the basement, law enforcement observed unknown white powders, multiple pills, kitchen appliances, mixing tools with white residue, unknown liquids, scales, a kilogram/pill press, and Colton Schock's black iPhone.

21. An analysis was conducted of Colton Schock's cell phone. Contained within Colton Schock's cell phone are messages to an individual named "Dr" phone number 562-305-2747, which is also mentioned previously in this affidavit. As previously detailed, Daniel Torres is identified as the subscriber for this account. In a series of messages over the "Signal" App messenger service, Colton Shock aka "Deangelo" and Daniel Torres aka "Dr" discuss the sale of cocaine and various other drugs, as well as the transfer of drug related proceeds and financial transactions.

22. On January 21, 2021 at approximately 5:50pm, Colton Schock has a photo of a Cashapp payment on his cell phone which reads: "Sent! $3,300 will be deposited once Prophdcy completes the payment."

23. In addition to the above detailed drug related messages between Schock and Torres, I reviewed several images of USPS receipts and tracking number which were discovered on Schock's. One of the USPS receipt images show that on July 10, 2021, USPS Express Mail package EJ866320055US was mailed from Fargo, ND to Victorville, CA. I reviewed USPS records and databases which show this Express Mail package was sent to PO BOX 1838, Victorville, CA. The Express Mail package was addressed to "Daniel, PO BOX 1838, 16333 Green Tree Blvd.,

Victorville, CA 92393" and from "Cruz Shock, 4250 47th St. S. Unit B, Fargo, ND 58104." USPS records show that Daniel Torres has been the owner of this PO BOX since July 8, 2021, which is shortly after the date when $62,740 was seized from a package destined to 12303 Sunglow Ct., Victorville, CA. A review of USPS records show that Express Mail and Priority Mail packages started being shipped to this address from North Dakota and Minnesota on July 10, 2021.

24. On August 27, 2021, DEA and USPIS interviewed a Confidential Source (hereafter referred to as CS) who stated that she/he was present when a package was sent to Victorville, CA with the name "Deangelo." The CS stated that she/he was present when packages were sent to Victorville, CA a few times. The CS stated that she/he wrote the name on the package because she/he had good handwriting. As previously stated in this affidavit, I obtained a Federal search warrant and seized marijuana from a package destined to Grafton, ND. The CS provided information about associates of his/hers that were associated with the recipient of this package. The CS stated she/he used his/her Wells Fargo bank account to transfer suspected drug proceeds. The CS stated she/he was provided a phone number which she would enter in the Wells Fargo application so that money could be transferred. The CS showed agents images of money transfers she/he completed in the Wells Fargo application.

25. On September 16, 2021, myself and DEA SA Coleman conducted a proffer interview of another CD. The CD admitted to receiving significant amounts of cocaine, M-30 pills, Xanax pills, and marijuana, from Deangelo Torres. These controlled substances were either physically transported form Victorville, CA back to North Dakota, or shipped via mail. The CD stated he physically delivered cash payments to "Deangelo", mailed cash payments, and also sent drug related payments to "Deangelo" via Peer to Peer applications such as SnapChat, CashApp, and via Bitcoin. The CD identified the SnapChat username associated with "Deangelo" as a variation of "ProphecyDY" or "Prophecy."

26. I know through training and experience that Cash App, Zelle, Apple Cash, Venmo, and other similar platforms, are applications that can be downloaded on mobile or other electronic devices. These applications can then be used to conduct peer to peer money transfers. These money transfer applications may be linked to bank accounts, physical debit cards, cryptocurrency accounts, or physical cash cards.

27. Based on a review of Torres' financial accounts, my training and experience, and details previously mentioned in this affidavit, I believe probable cause exists that Torres is in the business of distributing controlled substances and is using the financial accounts to conduct money laundering.

FINANCIAL TRANSACTIONS

JP MORGAN CHASE

28. I requested, received, and reviewed financial banking records from JP Morgan Chase bank for accounts held in the name of Daniel Torres, specifically account x-1986, for the time period beginning June 10, 2020 through July 30, 2021.

29. JP Morgan Chase records show Torres' account x-1986 was opened on June 10, 2020 as is designated as a business checking account. A review of the JP Morgan Chase financial records shows suspicious large cash deposits and withdrawals, most always in even amounts, and several of these deposits and withdrawals are made on the same day but during different transactions. All of the reviewed cash deposits/withdrawals were less than $10,000. For example:

- 06/25/2020: $5,000 withdrawal
- 06/30/2020: $7,000 withdrawal
- 07/01/2020: $1,450 deposit
- 07/10/2020: $2,550 withdrawal
- 07/13/2020: $5,000 withdrawal
- 07/15/2020: $2,500 withdrawal

- 07/20/2020: $1,000 withdrawal
- 07/21/2020: $5,000 withdrawal
- 08/12/2020: $4,000 withdrawal
- 08/31/2020: $3,500 withdrawal
- 09/17/2020: $8,000 withdrawal
- 09/21/2020: $4,000 withdrawal
- 10/02/2020: $5,000 withdrawal
- 10/05/2020: $8,000 withdrawal
- 10/21/2020: $8,000 withdrawal
- 11/02/2020: $3,000 withdrawal
- 11/30/2020: $3,500 withdrawal
- 12/14/2020: $3,000 withdrawal
- 01/07/2021: $4,900 deposit
- 02/12/2021: $2,700 deposit
- 02/12/2021: $7,300 deposit
- 03/08/2021: $1,980 deposit
- 03/08/2021: $280 deposit
- 03/18/2021: $24,020 deposit
- 04/15/2021: $1,695 deposit
- 04/15/2021: $1,300 deposit
- 04/15/2021: $674 deposit
- 04/20/2021: $2,000 deposit
- 04/20/2021: $2,000 deposit
- 04/20/2021: $2,000 deposit
- 04/20/2021: $1,980 deposit
- 04/29/2021: $3,250 deposit
- 05/03/2021: $2,180 deposit
- 05/03/2021: $2,000 deposit
- 05/03/2021: $1,980 deposit
- 05/03/2021: $1,780 deposit

- 05/06/2021: $30,000 deposit

30. A review of the deposits into the JP Morgan Chase account show that the primary source of funds is from Peer-to-Peer payments (Venmo, Zelle, Cash App, Pay Pal, Apple Cash) and cash deposits. I reviewed the deposits for the entire time period indicated above and did not observe any regular check deposits or direct deposits consistent with employment income. The account has a high frequency of Peer-to-Peer type transactions to multiple persons and/or entities, including deposits and payments. The large amount of Peer-to-Peer transactions is consistent with information previously mentioned in this affidavit which shows how Torres was paid for drug transactions. A review of the most recent three months of activity (May, June, July), and not including cash deposits previously stated, show a total of twenty (20) Peer to Peer deposits totaling approximately $55,310.38. The largest number of Peer-to-Peer deposits in any month, was thirty (30), in August 2020, totaling approximately $29,627.06.

31. Additional pertinent banking transactions identified in the Chase account include frequent "re-occurring" payments to Shippo. I know that through training and experience Shippo is a software company that assists e-commerce businesses and online platforms, integrate shipping services with multiple carriers into their services. Shippo allows customers to compare shipping rates, create labels, track packages, and more. As previously mentioned in this affidavit, I have identified a large amount of packages that is associated with this investigation through reviewing USPS records. A portion of these packages show that the postage was paid for through use of a Shippo account. An example of the most recent Shippo transactions are detailed as: 06/29/2021, *"Recurring Card Purchase Postage Go-Shippo.Com"* for $131.96; 06/28/2021, *"Recurring Card Purchase Postage Go-Shippo.Com"* for $82.47; 06/21/2021, *"Recurring Card Purchase Postage Go-Shippo.Com"* for $109.44.

32. A review of most recently available financial records from Torres's JP Morgan Chase account shows money was withdrawn from the JP Morgan Chase account and transferred to numerous other accounts in the name of Daniel Torres as detailed below.

## ROBINHOOD

33. I reviewed a high frequency of large money transfers between Torres's JP Morgan Chase account and a Robinhood account. From most recently available financial records, the three (3) most recent Robinhood money transfers are detailed as: 05/18/2021 transfer to Robinhood account in name of Daniel Torres for $11,000; 04/22/2021 transfer to Robinhood account in name of Daniel Torres for $11,000; and 04/16/2021 transfer to Robinhood account in name of Daniel Torres for $3,000. As stated above, and based on my training and experience, the primary source of funds in the JP Morgan Chase account is consistent with controlled substance related proceeds. These suspected controlled substance related proceeds are then transferred to other accounts controlled by Daniel Torres, including Coinbase, Bank of America, Robinhood, and US Bank.

## COINBASE

34. I reviewed several large money transfers between Torres's JP Morgan Chase account and a Coinbase account. Three (3) most recent Coinbase money transfers are detailed as: 05/07/2021 transfer to Coinbase account in the name of Daniel Torres for $5,200; 05/07/2021 transfer to Coinbase account in the name of Daniel Torres for $10,000; 05/03/2021 transfer to Coinbase account in the name of Daniel Torres for $600. Through training and experience, I know that Coinbase is a crypto-currency exchange platform. Coinbase allows customers to invest in and/or trade various cryptocurrencies.

## US BANK

35. I reviewed several large money transfers from Torres's JP Morgan Chase account to a US Bank account in the name of Daniel Torres. Examples of the US Bank

money transfers are detailed as: 06/16/2021 electronic transfer to US Bank account in name of Daniel Torres for $11,000; 06/01/2021 electronic transfer to US Bank account in name of Daniel Torres for $8,000. I then saw several large money transfers from US Bank to a Bank of America account in the name of Daniel Torres.

36. I requested, received, and reviewed financial bank records from US Bank, for accounts held in the name of Daniel Torres and Prophecy Industry Corporation, specifically account x-1415, for the time period beginning July 31, 2020 through August 31, 2021. US Bank records show this business account was opened on July 24, 2020. The title of the account is Prophecy Industry Corporation, and account holder is Daniel Torres. A review of the financial records shows consistent suspicious activity as previously detailed in the JP Morgan Chase and Wells Fargo accounts, wherein the primary source of funds includes Peer to Peer payments. These deposits primarily fund debit purchases, cash withdrawals, and other Peer to Peer Payments. A review of deposit activity for August 2021 shows all 28 deposits into the account totaling $18,081.07 were funded entirely by Peer to Peer payments such as Venmo and Square. On August 12, 2021, Daniel Torres made a $6,037 customer cash withdrawal. On August 17, 2021, Daniel Torres made a $5,500 cash withdrawal. A review of deposit activity for July 2021 shows all 26 deposits into the account totaling $6,610 were funded entirely by Zelle Peer to Peer deposits. One of the deposits on July 27, 2021, was made by a known CS as previously detailed in paragraph 31. The Venmo deposits primarily funded debit purchases, cash withdrawals, and other Peer to Peer Payments. On July 28, 2021, Daniel Torres made a $2,500 cash withdrawal. On July 2, 2021, Daniel Torres made a $5,000 cash withdrawal.

## WELLS FARGO

37. I requested, received, and reviewed financial banking records from Wells Fargo bank for accounts held in the name of Daniel Torres, specifically account x-0915 for the time period December 22, 2018 through August 20, 2021.

38. I requested, received, and reviewed financial banking records from Wells Fargo bank, for accounts held in the name of Daniel Torres, specifically account x-0915, for the time period beginning December 22, 2018 through August 2021. The Torres Wells Fargo account was opened on October 29, 2018 as a joint personal checking account along with his mother, Ofelia Figueroa, as a secondary joint owner. A review of the financial records shows consistent suspicious activity as previously detailed in the JP Morgan Chase account, wherein the primary source of funds included cash deposits and Peer to Peer payments including PayPal, Venmo, and Apple Cash. Between September 2019 through February 2020, the account received approximately 75 Peer to Peer deposits totaling approximately $63,696. These deposits were funded through deposits from PayPal, Venmo, and Apple Cash. During approximately the same time period, there were 33 cash withdrawals from the account totaling $51,171.

39. Based on the above information, I submit that probable cause exists to believe the above detailed accounts contain funds constituting or derived from proceeds of violations of 21 U.S.C. §§ 841(a)(1), 846, and 18 U.S.C. § 1956(h), and said funds are subject to forfeiture under 18 U.S.C. § 981(a)(1)(C). I further submit that probable cause exists to support the issuance of a restraining order under 18 U.S.C. § 983(j)(1)(A).

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

*Thomas D. Irvin*
THOMAS D. IRVIN, U.S. Postal Inspector
United States Postal Inspection Service